**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **TARA E. LYONS,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **vs.** | * | **Civil Action 05-00689-CB-B** |
| | * | |
| **MICHAEL J. ASTRUE,**[1] | * | |
| **Commissioner of Social** | * | |
| **Security,** | * | |
| | * | |
| **Defendant.** | * | |

**REPORT AND RECOMMENDATION**

Plaintiff Tara E. Lyons ("Plaintiff") brings this action seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for supplemental security income under Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 1381 et seq.  This action was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Oral argument was held on December 20, 2006.  Upon consideration of the administrative record, oral argument, and memoranda of the parties, it is **RECOMMENDED** that the decision of the Commissioner be **REVERSED** and **REMANDED.**

---

[1]On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, he has been substituted for Jo Anne B. Barnhart, as the Defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.   **Procedural History**

Plaintiff protectively filed an application for benefits on May 12, 1999.  (Tr. 472-474).  Plaintiff alleged that she has been disabled since August 1, 1990, due to back and leg pain and a seizure disorder.   (Id. at 65-69, 115, 472-474).   Plaintiff's initial application was denied after three levels of review, and her second application for benefits was denied after two levels of review.[2]  (Id. at 74-88, 432-459).  The ALJ issued an unfavorable decision on September 29, 2000.  (Id. at 74-85).  Plaintiff sought review, and on May 29, 2002, the Appeals Council ("AC") remanded her first application back to the ALJ for further proceedings. (Id. at 94-96).  At that point, her applications were consolidated. (Id.)   On October 3, 2002, a second administrative hearing was held, which was attended by Plaintiff, her representative and a vocational expert.  (Tr. 56-73).  On March 24, 2003, the ALJ issued a second unfavorable decision wherein he found that Plaintiff was not disabled because she retains the residual functional capacity ("RFC") for a full range of unskilled work at all exertional levels, except for work around certain environmental hazards, and that she can perform other work which exists in significant numbers the national economy.   (Id. at 18-39).   The AC denied review, thereby making the ALJ's decision the final decision of the

---

[2]Plaintiff filed two prior SSI applications in January 1997 and April 1999, which were denied after initial consideration; she did not appeal.  (Id. at 432-435, 440-451).

Commissioner.  (Id. at 13-16).  20 C.F.R. § 416.1481.  The parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. § 405(g).

## II.  Factual Background

Plaintiff was born on March 12, 1973 and was 29 years old at the time of the administrative hearing.  (Tr. 23, 60).  She has a 10th grade "limited" education and no past relevant work ("PRW") experience.  (Id. at 23, 39, 60).  At the administrative hearing held on October 3, 2002, Plaintiff testified, in relevant part, that she receives medical treatment every month, for her seizures, from Dr. Harrison and Dr. Nowack.  (Id. at 56-73).  Plaintiff further testified that her seizures make it difficult for her to remember things, and that she last experienced a seizure three weeks prior to the hearing.  (Id. at 67-68).

## III. Issue on Appeal

A.    Whether the ALJ erred by relying exclusively upon the Medical-Vocational Guidelines?

## IV.  Analysis

### A.    Standard of Review

In reviewing claims brought under the Act, this Court's role is a limited one.  The Court's review is limited to determining: 1) whether the decision of the Secretary is supported by substantial evidence; and 2) whether the correct legal standards were applied.

Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).[3]  A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).  The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding that substantial evidence is defined as "more than a scintilla but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion[]").   In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision.  Chester v. Bowen, 792 F. 2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. DIST. LEXIS 10163 (S.D. Ala. 1999).

**B.   Discussion**

An individual who applies for Social Security disability benefits must prove her disability.   20 C.F.R. §§ 404.1512, 416.912.   Disability is defined as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

---

[3]This Court's review of the Commissioner's application of legal principles is plenary.  Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 404.1505(a), 416.905(a).   The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven her disability.  20 C.F.R. §§ 404.1520, 416.920.[4]

In his decision, the ALJ recounted the procedural history of the case and noted that the issue was whether Plaintiff was disabled from May 12, 1999 until the date of the decision.  (Tr. 21-39).   The ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of May 12, 1999.  (Id.)  The ALJ concluded that while Plaintiff has the severe impairment of generalized convulsive epilepsy, her impairment does not meet or medically equal any of the listed

---

[4]The claimant must first prove that he or she has not engaged in substantial gainful activity.  The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work.  Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986).  In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; (4) the claimant's age, education and work history.  Id. at 1005.  Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history.  Sryock v. Heckler, 764 F.2d 834 (11th Cir. 1985).  If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled.  Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999).  See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

impairments in 20 C.F.R., Appx. 1, Subpt. P, Reg. No. 4.  (Id.)
The ALJ also found that Plaintiff's lower back, leg and chest pain
and mental impairments were not severe.  (Id.)  The ALJ next
determined that Plaintiff retains the residual functional capacity
("RFC") to perform a full range of unskilled work activities at all
exertional levels, reduced by environmental limitations (no driving
automotive equipment, working around or operating hazardous
machinery, working at unprotected heights or working in an
environment that might cause an injury if she was to have a
seizure).  (Id.)  The ALJ also found that Plaintiff has a limited
level of education and no past relevant work experience ("PRW").
(Id.)  The ALJ concluded, citing SSR 85-15, that Plaintiff's non-
exertional environmental limitations did not erode her occupational
base and did not preclude use of the Medical-Vocational Guidelines
("the Grids").  (Tr. 21-39).  Thus, relying exclusively on the
Grids, the ALJ determined that Rule 204.00 of the Grids directed a
finding that Plaintiff is not disabled.  (Id. at 37-39).

    The undersigned finds that substantial evidence of record does
not support the ALJ's decision.[5]  The record reveals, in relevant
part,[6] that Plaintiff has been treated for seizures by William J.

_____

[5]Plaintiff does not dispute the ALJ's weighing of the medical evidence
of record, his conclusion that her epilepsy is one of her severe impairments,
or his finding that she has non-exertional environmental limitations.
Accordingly, only the relevant medical evidence has been summarized.

[6]Exhibits 12F, 14-15F, 17F, 19F, 21F, 23-24F, 26F, 29F, 31-33F, 36-38F,
40F and 48F, provide relevant records with regard to Plaintiff's epilepsy.

Nowack, M.D. ("Dr. Nowack") at the USA Department of Neurology since 1998. (Tr. 237-239, 253-257, 621-649, 664-683, 733-734, 743-744, 780). Plaintiff reported that she had been having seizures since 1990, that she has seizures 2-4 times a month, and that she becomes stiff, and starts to jerk and salivate. (Id.) During the course of his treatment of Plaintiff, Dr. Nowack had Plaintiff undergo various exams, including a MRI brain scan and EEG, and assessed her with generalized convulsive epilepsy adding that given the EEG results, she quite possibly has complex partial seizures progressing to becoming secondarily generalized. (Id.) He continued her on Dilantin, her anti-epileptic medication. (Id.) He also instructed Plaintiff not to drive a motor vehicle or participate in any activities where she might hurt herself or others should she have a spell. (Id.) He noted that the goal was to completely eliminate all of her seizures. (Id. at 665, 744). In a letter dated June 23, 2000, Dr. Nowack indicated that Plaintiff's description of her spells during her June 22nd exam was suggestive of seizures, but that he did:

> . . . . not feel it was sufficiently precise to be diagnostic. Unfortunately her routine EEG only showed non-specific abnormalities. Such a tentative working diagnosis is, in my opinion, sufficient to guide a therapeutic trial of treatment. Although it is possible that Tara could be having epileptic events, a proven diagnosis is not yet available. Further attempts to obtain a diagnosis are in process. Definite prognosis and future treatment depend upon diagnosis.

(Tr. 733).

On September 2, 1999, a DDS physician completed a Residual Physical Functional Capacity Assessment and opined that Plaintiff had generalized convulsive epilepsy and that she had no exertional, manipulative, communicative or visual limitations. (<u>Id</u>. at 654-661). The physician further opined that Plaintiff could "occasionally" to "never" climb ladders, ropes or scaffolds, and must avoid all exposure to hazards (machinery, heights). (<u>Id</u>.) On December 27, 1999, Eric G. Becker, D.O. ("Dr. Becker") performed a consultative examination and assessed Plaintiff with a history of chronic seizure disorder, poorly controlled. (<u>Id</u>. at 687-690).

On January 28, 2000, a DDS physician completed a Physical Residual Functional Capacity Assessment and opined that Plaintiff had seizure disorder, GSW by history and a thigh injury, and that she had no exertional, visual, manipulative or communicative limitations. (<u>Id</u>. at 694-701). He further opined that Plaintiff could never climb ladders, ropes or scaffolds and that she must avoid concentrated exposure to hazards (machinery, heights, etc.) and "no unprotected heights or working with or around hazardous machinery." (<u>Id</u>.) The DDS physician noted that Plaintiff's statements of symptoms were only partially credible and that she has been noted to have infrequent seizures and to have given a different medical history at exams. (Tr. 699-700). On March 29, 2000, Sarwat Khawa, M.D. ("Dr. Khawa") noted on a USA prescription, that Plaintiff was under his care and that she was unable to do any

type of work until released from said care.  (<u>Id</u>. at 713).   On
September 5, 2000, Otis Harrison, M.D. ("Dr. Harrison") wrote a "To
Whom It May Concern" letter in which he stated that Plaintiff has
a history of seizure medication, was taking Dilantin for her
seizures, and that it was his medical opinion that she was unable
to work, noting that she had undergone two years of treatment with
no improvement in her condition.  (<u>Id</u>. at 777).

On June 7, 2001, a DDS physician completed a Physical Residual
Functional Capacity Assessment and opined that Plaintiff had no
exertional, manipulative, visual or communicative limitations; that
she was non-compliant with her medication; that her EEG was
minimally abnormal; that she can never climb ladders, ropes or
scaffolds "due to [her] seizures[;]" and that she must avoid even
moderate exposure to hazards (machinery, heights, etc.) and "should
avoid driving, hazardous machinery and unprotected heights due to
[her] seizures."  (<u>Id</u>. at 281-288).

1.    **Whether the ALJ erred by relying exclusively upon the Medical-Vocational Guidelines?**

Plaintiff argues that the ALJ should have obtained vocational
expert ("VE") testimony to assess the affect of her epilepsy and
non-exertional limitations.  Specifically, Plaintiff contends that
the ALJ erred by relying exclusively on the <u>Medical-Vocational</u>
<u>Guidelines</u> ("the Grids") and SSR 85-15 given her generalized
convulsive epilepsy and non-exertional environmental limitations
(no work involving driving automotive equipment, working around, or

operating, hazardous machinery, working at unprotected heights, or working in an environment that might cause an injury if she was to have a seizure).

As noted supra, at the fifth step of the sequential evaluation process, the burden shifts to the Commissioner to show that there are a significant number of jobs in the national economy that the claimant can perform.  See, e.g., Phillips v. Barnhart, 357 F.3d 1232, 1239-1240 (11th Cir. 2004).  In so doing, the ALJ must determine the claimant's RFC (i.e., what the claimant is still able to due despite her impairments), and this determination is based on all relevant medical and other evidence.[7]  Id.  The ALJ then uses the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy that she can perform.  Id.  The ALJ can either use the Grids or VE testimony.  Id. at 1240.  In using the Grids, the ALJ inputs the claimant's physical exertion level, skill level, age, education, and experience into a formula, which establishes whether the claimant is disabled.  Id.

Stated more specifically, where non-exertional impairments do not significantly erode the occupational base, the ALJ may use the

---

[7]A claimant's RFC can contain both exertional and non-exertional limitations.  Phillips, 357 F.3d at 1242-1243.  These limitations generally include a restriction to a particular physical exertion level, such as light, medium or heavy, and a particular skill level, such as unskilled or semi-skilled.  20 C.F.R. §§ 404.1567, 404.1568. Impairments and limitations that do not implicate the strength required to perform a particular task are considered non-exertional. For example, impairments that cause environmental restrictions are non-exertional. SSR 96-8p.

Grids.   See, e.g., Sryock v. Heckler, 764 F.2d 834, 836-837 (11th

Cir. 1985).  The Grids fulfill the burden of proving the existence

of jobs in the national economy that Plaintiff could perform, given

her age, education, vocational profile and RFC, and the use of the

Grids is a valid exercise of the Commissioner's authority.  Id.

See also e.g., Heckler v. Campbell, 461 U.S. 458 (1983).   Non-

exertional limitations will render the Grids inapplicable, however,

when the limitations are severe enough to prevent a wide range of

gainful employment at the designated level.  See, e.g., Sryock, 764

F.2d at 836-837; Phillips, 357 F.3d at 1243.[8]  The Eleventh Circuit

has made clear that "[e]xclusive reliance on the grids is not

appropriate *either* when [the] claimant is unable to perform a full

range of work at a given residual functional level *or* when a

claimant has non-exertional impairments that significantly limit

basic work skills."   Phillips, 357 F.3d at 1242 (quotation

omitted).[9]   This Court has further established that use of VE

testimony is the preferred method of determining whether a claimant

can perform other work which exists in significant numbers in the

national economy based upon the claimant's exertional and non-

exertional functional limitations.  See, e.g., Gray v. Massanari,

2001 WL 530704, *2 (S.D. Ala. May 1, 2001); Cowart v. Schweiker,

---

[8]Cf. Passopulos v. Sullivan, 976 F.2d 642, 648 (11th Cir. 1992).

[9]The Eleventh Circuit has interpreted "significantly limits basic work
skills" to mean limitations that prohibit a claimant from performing "a wide
range of work at a given work level."  Phillips, 357 F.3d at 1243.

662 F.2d 731, 736 (11th Cir. 1981); Chester v. Bowen, 792 F.2d 129, 131-132 (11th Cir. 1986).[10]

In Marbury v. Sullivan, 957 F.2d 837, 839-840 (11th Cir. 1992) (per curiam),[11] the Eleventh Circuit held that a claimant who is precluded from working around unprotected heights or dangerous moving machinery (i.e., non-exertional environmental limitations) is *not* able to do unlimited types of work; thus, VE testimony is required to determine whether the limitations are severe enough to preclude the claimant from performing a wide range of work at a particular level. See also Foote v. Chater, 67 F.3d 1553, 1559-1560 (11th Cir. 1995) (providing that exclusive reliance upon the Grids was inappropriate when a claimant had a non-exertional impairment that significantly limited the claimant's basic work activities).

In the case sub judice, the ALJ determined that Plaintiff's generalized convulsive epilepsy constitutes a severe impairment,

---

[10]See also MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986) (stating that when non-exertional factors, such as pain or the effects of medications, are alleged, "the preferred method of demonstrating that the claimant can perform specific jobs is through the testimony of a vocational expert[]"; Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (finding that if non-exertional impairments significantly limit basic work activities, then the Grids do not apply and VE testimony should be obtained).

[11]In Marbury, the ALJ found that claimant suffered from the severe impairment of a seizure disorder, among other impairments, but that he could perform a wide range of light work reduced by his inability to work around unprotected heights or dangerous moving machinery, but that those impairments did not reduce the range of light work available to him; in so ruling, the ALJ relied exclusively upon the Grids.  Marbury, 937 F.2d at 839-840.  The Court held that the ALJ's conclusion was not supported by substantial evidence as there was no VE testimony, and VE testimony was required to establish whether the claimant's non-exertional impairments significantly eroded the occupational base at a given exertional level found in the Grids.  Id.

and that she retains the RFC to perform a full range of all levels

of unskilled work, but that her RFC is limited in that she cannot

drive automotive equipment, work around, or operate, hazardous

machinery, work at unprotected heights, or work in an environment

that might cause an injury if she had a seizure.   (Tr. 38).

Relying upon SSR 85-15, and Rule 204.00 of the Grids, the ALJ

concluded that Plaintiff was not disabled, stating as follows:

> .  .  .  . The  medical  evidence  establishes  that  the
> claimant possesses the severe impairment of generalized
> convulsive epilepsy . . . .

* * *

> .  .  .  . Taking  into  consideration  the  claimant's
> impairment, it is clear that she is able to perform work
> activities at all exertional levels with seizure disorder
> precautions against driving automotive equipment, working
> around  or  operating  hazardous  machinery,  working  at
> unprotected heights, or working in an environment in
> which she or those in her immediate vicinity would be
> placed in danger of severe physical injury in the event
> she was to have a seizure.  Nevertheless, she is able to
> perform  the  full  range  of  unskilled  work  at  any
> exertional level.  An individual with a seizure disorder
> who  is  restricted  only  from  being  on  unprotected
> elevations and near dangerous moving machinery is an
> example of someone whose environmental restrictions do
> not have a significant effect on work that exists at all
> exertional levels. (See Social Security Ruling 85-15).

* * *

> Section 204.00 . . . states the following:

> > The  residual  functional  capacity  to  perform
> > heavy  work  or  very  heavy  work  includes  the
> > functional capability for work at the lesser
> > functional  levels  as  well,  and  represents
> > substantial  work  capability  for  jobs  in  the
> > national  economy  at  all  skill  and  physical
> > demand  levels  .  .  .  .  Environmental

13

> restrictions ordinary would not significantly
> affect the range of work existing in the
> national economy for individuals with the
> physical capability for heavy work (or very
> heavy work) . . . .

* * *

> For all of the foregoing reasons, the undersigned
> Administrative Law Judge concludes that the claimant has
> been capable of performing unskilled work activities at
> all exertional levels, which includes the full range of
> heavy work, at all times relevant to this decision.
> Therefore, a finding of "not disabled" is directed by
> Rule 204.00 of the Medical-Vocational Guidelines
> (Regulations No.4, Subpart P, Appendix 2). Consequently,
> the undersigned finds that the claimant has retained the
> capacity to make an adjustment to other work which exists
> in significant numbers in the national economy at all
> times relevant to this decision. Because the claimant is
> capable of making an adjustment to other work, she is not
> disabled within the meaning of the Social Security Act .
> . . .

(Id. at 24, 35, 37-38).

Plaintiff contends that the ALJ's reliance upon SSR 85-15 and

the Grids was misplaced in light of Marbury v. Sullivan, 957 F.2d

837 (11th Cir. 1992).  In its response, the Government acknowledges

the holding in Marbury, but asserts that this case is

distinguishable from that case because the plaintiff in Marbury was

restricted to light work, whereas in this case, the ALJ found that

Plaintiff can perform work at all exertional levels and Social

Security Regulation 85-15 specifically addresses non-exertional

limitations at the heavy exertional level.

Social Security Regulation 85-15 provides, in relevant part,

as follows: "A person with a seizure disorder who is restricted

14

only from being on unprotected elevations and near dangerous moving machinery is an example of someone whose environmental restriction does not have a significant effect on work that exist at all exertional levels."   SSR 85-15, 1985 WL 56857, *8 (S.S.A.).   The undersigned finds that the example contained in Social Security Regulation 85-15 is not applicable to this case because the ALJ expressly found that Plaintiff is not just restricted from being on unprotected elevations and near dangerous moving machinery, but that she is also restricted from working in any environment in which she, or those in her immediate vicinity, would be placed in danger of severe physical injury in the event she was to have a seizure.   The restrictions established by the ALJ went beyond those encompassed within the example in Social Security Regulation 85-15; thus, the ALJ erred in relying upon that ruling to determine that Plaintiff's environmental restrictions do not significantly erode her occupational job base at the heavy exertional level.   The ALJ likewise erred in relying upon the Grids, in light of his holding that Plaintiff is not just restricted from being on unprotected elevations and near dangerous moving machinery, but is also restricted from working in any environment in which she, or those in her immediate vicinity, would be placed in danger of severe physical injury in the event she was to have a seizure.   On remand, the Commissioner should obtain the opinion of a vocational expert to determine whether there are jobs in significant numbers in the

national economy that Plaintiff can perform given her functional limitations.  See, e.g., Phillips, 357 F.3d at 1241-1242 (providing that exclusive reliance on the grids is inappropriate when claimant has non-exertional impairments that significantly limit basic work skills); MacGregor, 786 F.2d at 1054 (stating that when non-exertional facts are alleged, "the preferred method of demonstrating that the claimant can perform specific jobs is through the testimony of a vocational expert[]"); Swindle v. Sullivan, 914 F.2d at 226 (holding that if non-exertional impairments significantly limit basic work activities, then the Grids do not apply and VE testimony should be obtained).

**V.   Conclusion**

For the reasons set forth, and upon consideration of the administrative record, oral argument and memoranda of the parties, it is **RECOMMENDED** that the decision of the Commissioner of Social Security, denying Plaintiff's claim for supplemental security income, be **REVERSED** and **REMANDED** for further proceedings not inconsistent with this opinion.

The attached sheet contains important information regarding objections to this Report and Recommendation.

DONE this **22ⁿᵈ** day of **February, 2007.**

                              **/s/ Sonja F. Bivins**
                              **UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

1.    **Objection**.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  See 28 U.S.C. § 636(b)(1)(c); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

>    A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

>    A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.    **Opposing party's response to the objection.**  Any opposing party may submit a brief opposing the objection within ten (10) days of being served with a copy of the statement of objection.  Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

3.    **Transcript (applicable where proceedings tape recorded)**.  Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

                              **/s/SONJA F. BIVINS**
                              **UNITED STATES MAGISTRATE JUDGE**